IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

AARON FLEMONS                                              PLAINTIFF
ADC #119749

V.                      No. 5:17-cv-00204-KGB-ERE

LaSONYA GRISWOLD, *et al*.                      DEFENDANTS

## RECOMMENDED DISPOSITION

### I.    Procedures for Filing Objections

This Recommendation for dismissal has been sent to United States District Judge Kristine G. Baker. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record.

### II.    Introduction

Plaintiff Aaron Flemons, an inmate at the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC"), filed this action *pro se*. He claims that from July 2, 2015 through mid-December 2016, while housed first at

the Cummins Unit ("CU") and later at EARU, he received inadequate medical care for a finger injury he sustained at the Sebastian County Jail.

The remaining defendants in the case are Correct Care Solutions ("CCS"), a company that contracts with the ADC to provide on-site medical care to inmates, and seventeen CCS employees (collectively, "the Medical Defendants").[1] Also remaining is Defendant Rory Griffin ("Defendant Griffin"), the ADC's deputy director for health and correctional services. Mr. Flemons claims that Defendant Griffin denied him appropriate medical treatment for his finger by failing to properly investigate and act on his grievances complaining about inadequate medical care.

Mr. Flemons sues each defendant in his or her individual and official capacity under 42 U.S.C. § 1983, and he joins supplemental state law claims for medical

---

[1] In addition to CCS, the Medical Defendants include LaSonya Griswold, Estella Bland, Alesshia Quinones, Dana Taunton, Lisa Knight, Dana Peyton Haynes, Erika Crompton, Yavonda Key, Monica Dunn, Quible Butler, Sarah McVay, Lana Fryer Duvall, Megan Thomas, Charles Crawley, Angela Mixon, Adloneya Baker, and Alisha Bell.

The Court previously granted in part and denied in part the Medical Defendants' and Defendant Griswold's separate motions for partial summary judgment on the issue of exhaustion. *Doc. 138.* Although the Court determined Mr. Flemons had failed to exhaust a portion of his claims, it found that Mr. Flemons had exhausted and could proceed with the claims addressed in this recommendation.

Additionally, the following Defendants were previously dismissed from the lawsuit due to Mr. Flemons' failure to provide a valid address for service: (1) Defendant Cavallo (*Doc. 59*); (2) Defendants Dr. Byrd, Tina Evans, Jalen Tucker, Brandi Hibbs, Amanda Sackett, Tasia Moss, and Lindsey Wingfield (*Doc. 134*); and Defendant Amanda Watt (*Doc. 103*).

malpractice. He seeks compensatory and punitive damages plus declaratory relief[2] that would deem the ADC's medical grievance procedure unconstitutional.

The Medical Defendants have filed a motion for summary judgment (*Docs. 39, 40, 41*), and Mr. Flemons has filed a response in opposition. *Doc 158, 159, 160*. Defendant Griffin has filed a separate motion for summary judgment, (*Docs.148, 149, 150*). The extended time for filing a response has passed, and Mr. Flemons has not responded to Defendant Griffin's motion.[3] After careful consideration, and for reasons that follow, the Court recommends that summary judgment be granted in Defendants' favor and that this action be dismissed.

## III.    Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a prerequisite to summary judgment, a

---

[2]   Mr. Flemons alleges no facts to support a claim that the state agency's grievance procedure is unconstitutional, and he mislabels his request for declaratory relief as one for injunctive relief. See *Doc. 1*, *at 9* ("The Plaintiff seeks injunctive relief in the form of having the medical grievance procedure deemed to be unconstitutional, when applied to medical issues.").

[3]   As explained in Section V of this recommendation, Mr. Flemons' claim against Defendant Griffin is inextricably connected to his claims against the Medical Defendants. Because the Court finds no genuine issues for trial on claims against the Medical Defendants, it is *most* unlikely that a response to Defendant Griffin's motion would alter the Court's recommendation to dismiss this action in its entirety.

moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

## IV. Medical Defendants' Motion for Summary Judgment – Claims Under 42 U.S.C. § 1983

### A. Factual Background[4]

On July 2, 2015, Mr. Flemons presented at the CU infirmary and reported that he had been tased and injured while housed at the Sebastian County Jail. The

---

[4] Unless otherwise noted, the facts, described in the parties' corresponding statements of facts and attached exhibits (*Docs. 147, 160*), are undisputed. See Local Rule 56.1 (describing requirement to file separate statements of material fact when moving for or opposing summary judgment).

4

attending nurse noted that Mr. Flemons' middle right finger was swollen and she prescribed ibuprofen. Doc. 147-1 at 1.

On July 7, 2015, Mr. Flemons returned to the CU infirmary stating that his finger was swollen and painful. *Id*. The nurse noted, "Inmate states that this injury[] happen[ed] in county jail last week. His finger has swelling and he is able to bend a little bit [and] does not appear to have a fracture." *Id*.

On July 12, 2015, Mr. Flemons returned to the CU infirmary complaining of a swollen, painful finger. Defendant LaSonya Griswold, an advanced practice registered nurse ("APRN"), noted: "[Third] digit on the right hand is swollen, no deformity noted, inmate states that it's difficult to bend[,] and he has [complained of] pain." *Id. at 2*. Defendant Griswold wrote, "avulsion [rule out] fracture[,]" and she scheduled an x-ray appointment for July 17, 2015. *Id*.

A radiology report dated July 18, 2015 documented x-ray results for Mr. Flemons' right hand:

> All the carpal joints . . . are well aligned.  No fracture or dislocation is seen.  No appreciable soft tissue swelling is seen.  Please note that some fractures are initially radiographically occult.  Advise repeat films in about 10 days if symptoms persist.
>
> Conclusion: Normal right hand.

*Doc. 147-1 at 64.*

On July 25, 2015, Mr. Flemons went to the CU infirmary, complaining that his finger was swollen and painful. *Id. at 2*. The attending nurse observed swelling at the middle finger joint. Noting that the July 18 radiology report suggested a follow-up x-ray if symptoms continued, she referred Mr. Flemons for reevaluation and prescribed ibuprofen, two times a day for pain. *Id*.

On August 7, 2015, Mr. Flemons presented at the CU infirmary for reevaluation, complaining of pain and swelling to his finger. *Id. at 3*. Defendant Griswold ordered more x-rays, scheduled for August 14, 2015. *Id*.

A radiology report dated August 14, 2015 documented the results of x-rays to Mr. Flemons' right hand:

> All the carpal joints . . . are well aligned. Modest soft tissue swelling at [third] PIP joint noted.

> Conclusion:  No definite acute fracture.

*Id. at 65*.

On August 21, 2015, Mr. Flemons visited the CU infirmary and reported that he was still experiencing pain in his finger. *Id. at 4*. The nurse's notes recorded that she observed slight edema and referred Mr. Flemons to the medical provider, Defendant Griswold. *Id*.

On August 26, 2015, Defendant Griswold saw Mr. Flemons. She noted that "the swelling has decreased and he has increased [range of motion]." *Id*. Defendant Griswold noted that there was no indication for treatment. *Id*.

Mr. Flemons went to the CU infirmary on September 11 and 22, 2015, complaining of finger pain. *Id. at 5*. On September 11, he received pain medication, and on September 22, the nurse referred him back to the provider, Defendant Griswold. *Id*.

On September 24, 2015, Defendant Griswold saw Mr. Flemons for finger pain. *Id. at 6*. Defendant Griswold noted that previous x-rays showed no fracture or dislocation, but that mild swelling remained and that Mr. Flemons had limited ability to make a full fist without pain. She added, "[N]o indication for further treatment at this time." *Id. at 6*.

Mr. Flemons visited the CU infirmary on October 29 and November 24, 2015, stating that he needed to see a specialist for his finger injury, and he was referred to Defendant Estella Bland, APRN. *Id. at 6-7*.

On November 20, 2015, Defendant Bland saw Mr. Flemons and noted subjective pain and moderate chronic deformity of the middle joint of the third finger on the right hand. *Id. at 7*. She prescribed ibuprofen 800 MG, twice daily for thirty days, and she scheduled a third x-ray for December 4, 2015. *Id*.

7

A third set of x-rays of Mr. Flemons' right had was taken on December 4, 2015. The radiology report reads:

> All the carpal joints . . . are well aligned.  No fracture or dislocation is seen.  Soft tissue swelling suggested along the second and third digits.
>
> Conclusion: Soft tissue swelling suggested along the second and third digits.

*Doc. 147-1 at 66*.

On January 22, 2016, Mr. Flemons visited the CU infirmary complaining of pain when he closed his right hand and relief immediately after straightening his finger. *Id. at 8*. The attending nurse, Defendant Aleeshia Quinones, noted a full range of motion and that the right middle knuckle was enlarged with a slight deformity. *Id*.

The same day, Mr. Flemons was placed in segregated confinement. According to his declaration submitted in opposition to summary judgment, Mr. Flemons had a fight with another inmate and "reinjured his already injured finger . . . ." *Doc. 160 at 7*. Mr. Flemons remained in segregated confinement over the next four months. *Docs. 147 at 5, 160 at 7*.

Prison records show that from January 23 through April 3, 2015, Mr. Flemons voiced no complaints during daily visits by nurses. *Doc. 147-1 at 8-19*. However, Mr. Flemons states that nurses did not speak to him during his segregated confinement and that he submitted several sick calls that "disappeared." *Doc. 160 at*

*7*. On February 19, 2016, Mr. Flemons submitted a grievance complaining that his finger was still swollen and painful and that he needed to see a specialist and have an MRI or Cat Scan. *Doc 2 at 50*. Notably, Mr. Flemons *did not* complain that he had submitted sick calls that disappeared, and a step-one response to the grievance by C. Davis, RN, states, "We have not received any recent sick calls from you complaining of finger pain. If you are experiencing finger pain, please submit a sick call so we can get you scheduled." *Id*

On April 4, 2016, a nurse performed a medical records review and noted that Mr. Flemons' January 22 infirmary visit indicated that Motrin was not helping his pain. *Doc. 147-1 at 19.* The reviewing nurse concluded that Mr. Flemons should have been referred to the medical provider on January 22, and she therefore placed a referral. *Id*.

On May 22, 2016, Dr. Jaron F. Byrd evaluated Mr. Flemons and noted that he was complaining of right middle finger pain. The doctor's notes state:

> Patient states that he was in an altercation in July at the county jail. Patient states that he had pain and swelling . . . that slowly improved. Patient now complaining about persistent . . . pain and swelling. Patient states that he has decreased range of motion and strength due to pain [and] cannot write . . . without pain.

*Id. at 27*. Dr. Byrd wrote that Mr. Flemons likely had chronic swelling due to ligamentous injury. He noted that injuries to the middle finger joint normally remain

swollen for some time. He provided Mr. Flemons with range of motion exercises, advised him to massage the joint, and prescribed ibuprofen for pain. *Id*.

On June 13, 2016, Dr. Byrd saw Mr. Flemons for finger pain and swelling and informed Mr. Flemons that his only treatment recommendation was physical therapy, which he had discussed with Mr. Flemons on May 22. *Doc. 147-1 at 33*. Dr. Byrd wrote: "Patient is not interested in surgery and is not a surgical candidate." *Id*.

Mr. Flemons transferred to EARU on July 8, 2016. On August 5, 2016, he visited the EARU infirmary complaining of finger pain. *Id. at 39*. Defendant Adloneya Baker noted that the middle joint of Mr. Flemons' right finger had scant swelling, his capillary refill was less than three seconds, he was able to move his right hand and fingers well but reported pain of 7 out of 10. *Id*. Defendant Baker scheduled an x-ray and referred Mr. Flemons to a provider for further evaluation and possible activity restriction. *Id*.

A radiology report dated August 8, 2016 documented a fourth set of x-rays on Mr. Flemons' right hand:

> Results: All the carpal joints . . . are well aligned.  No fracture or dislocation is seen.  No appreciable soft tissue swelling is seen.

> Conclusion: Normal right hand.

*Doc. 147-1 at 67*.

On August 10, 2016, Dr. Patrick S. Drummond examined Mr. Flemons' finger at the EARU health services center. *Id. at 41*. Dr. Drummond noted that Mr. Flemons stated he injured the finger at a county jail, approximately thirteen months earlier.[5] *Id*. Dr. Drummond reviewed Mr. Flemons' x-rays and noted that his grip, strength, and fine motor movements were within normal limits and that his right middle finger had slight edema at the middle joint. *Id*. He described the condition as a "fairly benign" contusion with subjective pain, and he prescribed continued clinical surveillance, NSAIDS, and sick call as needed. *Id*.

On August 31, 2016, Defendant Sarah McVay saw Mr. Flemons at EARU for finger pain and swelling. *Id. at 43*. Defendant McVay applied a splint and prescribed Naproxen. *Id*.

On September 6, 2016, Defendant Angela Mixon attempted to change Mr. Flemons' splint. *Id. at 44*. Her written report of the encounter states that Mr. Flemons stated he "did not need this done" and walked out. *Id*. Mr. Flemons submits his declaration stating that Defendant Mixon tried to provoke him and refused to change his splint. *Doc. 160 at 8*.

---

[5] Dr. Drummond's notes contain no mention of re-injury.

11

On September 16, 2016, Mr. Flemons reported to the EARU health office, complaining of finger pain. *Id*. Defendant Adloneya W. Baker referred him to a provider for pain control. *Id*.

On September 18, 2016, Mr. Flemons was transferred to segregated confinement. *Id. at 45*. He states that when he was seen for a pre-lock up evaluation, he was informed that a nurse would bring him his prescribed ibuprofen every day, but the medication was taken from him because inmates were forbidden to have ibuprofen 800 MG in the Max/Isolation area. *Doc 160 at 8*.

On September 21, 2016 Dr. Geraldine G. Campbell evaluated Mr. Flemons' finger. *Id. at 67*. She reviewed his x-rays and noted that the middle joint of the right middle finger had a bony prominence, with no acute redness; his range of motion was intact; and he could extend and flex the finger with no difficulty. Dr. Campbell described Mr. Flemons' condition as an old, right middle finger contusion, and she prescribed ibuprofen as needed.

Mr. Flemons' prison medical records show no further complaints of finger pain. *Doc. 147-1 at 47-63*. However, he states that he made numerous complaints of not receiving his pain medication while assigned to segregated confinement (*Doc. 160 at 6*) and that without pain medication, his finger "hurt bad," and sometimes kept him awake. *Doc. 160 at 8-9*.

12

## B.    Discussion

The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). "Deliberate indifference" in this context has both objective and subjective components. A plaintiff must demonstrate: (1) that he suffered from objectively serious medical needs; and (2) that prison officials actually knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The Medical Defendants seek summary judgment in their favor, asserting that Mr. Flemons had no serious medical need relating to his finger and that he received adequate medical care that went beyond that needed for his finger condition. *Doc. 145 at 3*. In support of their motion, the Medical Defendants submit the declaration of Chris Horan, M.D., a licensed physician and the regional director for Wellpath LLC, a company related to CCS. See Mot. to Substitute Party, EFC No. 9 at 1, *Harris v. Wellpath LLC*, No. 5:19-CV-00310 BSM (E.D. Ark. Nov. 8, 2016). Based on his review of Mr. Flemons' medical records, Dr. Horan states his conclusions:

> Four separate sets of x-rays for this injury indicates the providers went above and beyond to rule out any potential serious issue with this finger. There was no serious issue at any point. Further, staffing had nothing to do with any perceived lack of treatment for his finger sprain. Rather,

13

> Mr. Flemons received appropriate care for a sprained finger which exceeded his medical needs.
>
> There was no skin compromise; therefore, there was no need for his finger to have any type of dressing applied. Further, since it was a sprain, there was no need for any type of splint. To the contrary, range of motion exercises are good and preferable for healing.
>
> In my medical opinion, there was never any requirement for Mr. Flemons to have a one arm/hand duty script. While there was nothing wrong for a nurse to issue such a script while he was waiting to be seen by a provider, there was no medical need for one.

*Doc. 147-2 at 6.*

## 1.    Objectively Serious Medical Need

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dept. of Corr.,* 512 F.3d 478, 481 (8th Cir. 2008) (quotations and citation omitted).    The Eighth Circuit has:

> found a serious medical need that was obvious to a layperson where an inmate: was pregnant, bleeding, and passing blood clots, *see Pool v. Sebastian County, Ark.,* 418 F.3d 934, 945 (8th Cir.2005); had swollen and bleeding gums and complained of extreme tooth pain, *see Hartsfield v. Colburn,* 371 F.3d 454, 457 (8th Cir.2004); experienced excessive urination, diarrhea, sweating, weight loss, and dehydration related to known diabetes, *see Roberson v. Bradshaw,* 198 F.3d 645, 647–48 (8th Cir.1999); or exhibited signs of early labor and her medical records clearly documented a history of rapid labor and delivery, . . .

*Jones,* 512 F.3d at 482. "In each case cited, the inmate exhibited physical symptoms related to known medical issues or to complaints of pain." *Id*.

On July 7, 2015, when Mr. Flemons first reported his finger injury to medical staff, it was swollen, and he reported pain, but he could bend his finger and it did not appear fractured. *Doc. 14-1 at 1*. Over the months that followed, Mr. Flemons' symptoms remained but did not escalate. Several medical providers evaluated his finger during multiple sick calls, and multiple x-rays ruled out a fracture or dislocation. On May 11, 2016, almost one year after Mr. Flemons first reported his injury, Dr. Byrd diagnosed a ligamentous injury (i.e., sprain) for which he prescribed ibuprofen and range of motion exercises. *Doc. 147-1 at 27*. On August 10, 2016, Dr. Drummond described Mr. Flemons' condition as a "fairly benign" contusion (i.e., a bruise or injury to tissue) with subjective pain (*Id. at 41*), and on September 21, 2016, Dr. Campbell noted that Mr. Flemons had an "old right middle finger contusion." *Id*. at 67. Assuming that a ligamentous injury or a contusion qualifies as a serious medical need, which is far from clear, the undisputed evidence demonstrates that Mr. Flemons' condition was not "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones,* 512 F.3d at 481.

15

After careful review, the Court finds that no reasonable juror could find that Mr. Flemons suffered an objectively serious medical need.

### 2.    Deliberate Indifference

Even assuming the existence of an objectively serious medical need, Defendants are entitled to summary judgment on the issue of whether the Medical Defendants deliberately disregarded Mr. Flemons' need for treatment for his finger injury.

To show deliberate indifference, Mr. Flemons "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly,* 205 F.3d 1094, 1096 (*quoting Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995)). "Deliberate indifference may be found where 'medical care [is] so inappropriate as to evidence intentional maltreatment.'" *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Smith v. Jenkins,* 919 F.2d 90, 92 (8th Cir.1990)).

### a.    Defendant Griswold

Mr. Flemons claims that on July 12, August 7 and 26, and September 24, 2015, Defendant Griswold failed to provide him pain medication or a finger splint or wrap, and she failed to limit his use of the injured finger, which resulted in prolonged pain and delayed healing. *Doc. 2 at 5.*

16

The undisputed evidence shows that on July 12 and August 7, 2015, Defendant Griswold ordered x-rays of Mr. Flemons' finger to rule out a fracture. *Doc. 141-1 at 2-3*. On August 26 and September 24, 2015, she noted that the radiology reports showed no fracture or dislocation, and her in-person examination revealed that Mr. Flemons' swelling had decreased, and his range of motion had increased. *Id. at 4, 6*. Based on the objective evidence before her, Defendant Griswold determined that no treatment was needed. Dr. Horan states that in his medical opinion, Defendant Griswold provided medically appropriate care and treatment for Mr. Flemons' finger injury and that she "properly ordered objective studies and physically assessed his condition." *Doc. 147-2 at 3*.

"In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)). "The existence of a possible alternate course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably . . . ." *Dulany v. Carnahan*, 132 F.3d at 1241 (8th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Mr. Flemons'

disagreement with Defendant Griswold's course of treatment fails to create a question of fact as to deliberate indifference, and she is therefore entitled to summary judgment in her favor.

### b.    Defendant Bland

Mr. Flemons claims that on November 30, 2015, Defendant Estella Bland failed to provide him pain medication or a finger splint or wrap, and she failed to limit his use of the injured finger, which resulted in prolonged pain and delayed healing. *Doc. 2 at 5.*

The undisputed facts show that in response to Mr. Flemons' complaints of pain, Mr. Bland examined his finger and noted moderate, chronic deformity of the middle joint, with no loss of function of the hand. She prescribed ibuprofen for thirty days, as needed, and ordered yet another x-ray. *Doc. 147-1 at 7.*

Dr. Horan testifies that Mr. Flemons had a functioning hand in November 2015 and that Defendant Bland provided appropriate care for his condition and "went further than necessary by ordering a third x-ray." *Doc. 147-2 at 3.* He states, "Although it is my medical opinion that the continued prescription of ibuprofen was *not* medically necessary, I do not fault her for allowing it to be available to him . . . on an "as needed" basis . . . " *Id.*

Mr. Flemons' disagreement with Defendant Bland's course of treatment fails to create a question of fact as to deliberate indifference, and she is therefore entitled to summary judgment in her favor.

### c.    Dana Taunton

Mr. Flemons claims that on May 6, 2016, Defendant Dana Taunton gave him someone else's pain medicine. *Doc. 2 at 8*. In deposition, Mr. Flemons acknowledged that he recognized Defendant Taunton's error at the time and "flushed [the pills] in the toilet." *Doc. 147-3 at 5*. Although Mr. Flemons indicated during his deposition that he wanted to dismiss his claims against Defendant Taunton (*Id.*), he has not done so. It is undisputed that Defendant Taunton's error did not rise to the level of deliberate indifference and that her mistake caused no harm. Defendant Taunton is therefore entitled to summary judgment.

### d.    Delays in Receiving Medical Care

Mr. Flemons brings several claims related to alleged delays in receiving medical care. He claims: (1) CCS's understaffing caused delays in his receipt of medical care (*Doc. 46 at 3*); (2) Defendant Erika Crompton, a medical records clerk, caused unreasonable delay (from April 4, 2016 to May 11, 2016) before his examination by Dr. Byrd (*Doc. 33 at 3*); and (3) Defendant Dana P. Haynes failed to take corrective action to ensure that he was timely referred to a provider. *Id.*

19

"[W]hen the inmate alleges that [a] delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should . . . be measured 'by reference to the *effect* of delay in treatment.'" *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995), *overruled on other grounds by Reece v. Groose,* 60 F.3d 487 (8th Cir.1995)). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id*. (omitting citation).

Mr. Flemons has failed to submit verifying medical evidence showing that any delay in his receipt of medical care adversely affected his prognosis. Accordingly, the Medical Defendants listed above are entitled to summary judgment on claims that they deprived Mr. Flemons of his Eighth Amendment right to medical treatment by delaying treatment.

### e.   Failure to Dispense Medication

Finally, Mr. Flemons claims that Defendants Yavonda Key, Monica Dunn, Quible Butler, Sarah McVay, Lana F. Duvall, Megan Thomas, Charles Crawley, Angela Mixon, Adloneya Baker, and Alisha Bell caused him to go without pain medication, specifically ibuprofen, during his segregated confinement from September 18 through December 21, 2016.

20

Mr. Flemons states that he experienced pain when he went without ibuprofen. Dr. Horan provides his medical opinion that during the relevant time period, which included more than twelve months *after* Mr. Flemons injured his finger, he had no medical need for ibuprofen. *Doc. 147-2 at 5-6*. Dr. Horan explains that ibuprofen assists with initial pain and swelling, but Mr. Flemons had no need for the long-term use of ibuprofen. *Id*.

Deliberate indifference may be found with evidence of intentional interference with prescribed treatment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). However, there is no evidence in the record to support an inference that a single Medical Defendant acted with a culpable state of mind and knowingly exposed Mr. Flemons to a substantial risk of harm by failing to provide him ibuprofen. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."). The Court finds that the Medical Defendants charged with failing to provide Mr. Flemons ibuprofen from September 18 through December 21, 2016 are entitled to summary judgment in their favor.

## V.    Defendant Griffin's Motion for Summary Judgment - Claims Under 42 U.S.C. § 1983

Mr. Flemons claims that Defendant Griffin was deliberately indifferent to his serious medical needs when, after receiving his medical grievances, he failed to take

action to ensure that Mr. Flemons received adequate medical care. *Doc. 33 at 4*. Importantly, the medical grievances at issue, which Mr. Flemons claims received inadequate remedial action, state the *very* claims that Mr. Flemons brings against the Medical Defendants in this case. *Doc. 150 at 4-14.*

Defendant Griffin moves for summary judgment, asserting that: (1) he is entitled to sovereign immunity; (2) he is entitled to qualified immunity; and (3) Mr. Flemons' claims are barred under the doctrine of *respondeat superior.*[6] *Doc. 148 at 2.*

The Court finds that Defendant Griffin is entitled to summary judgment for a more fundamental reason: Absent an underlying constitutional violation by a Medical Defendant, the claims against Defendant Griffin necessarily fail. *Jackson v. Buckman*, 756 F.3d 1060, 1067 (8th Cir. 2014) (citing *See Wilson v. Spain,* 209 F.3d 713, 717 (8th Cir.2000)) ("To the extent Tucker asserts that Morgan, who is not a physician, was deliberately indifferent for his personal involvement in Tucker's

---

[6] Defendant Griffin observes correctly that supervisory liability under § 1983 cannot be established on a theory of *respondeat superior*. A supervisor may incur personal liability for a subordinate's constitutional violation under § 1983 only "if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (quoting *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994)).

medical care, this claim lacks merit for [this] reason: there was no constitutional violation in which Morgan could have participated.")

At the time in question, Defendant Griffin was the deputy director of health and correctional programs, and in that capacity, he reviewed inmate grievances and appeals regarding medical issues. *Doc. 148-2, at 1-2*. However, Defendant Griffin is not a medical provider and did not personally provide medical treatment to inmates. *Id. at 2*. His role was that of a supervisor, who ensured that medical personnel responded to inmates' medical needs. *Id*.

The undisputed facts demonstrate that the Medical Defendants are entitled to judgment as a matter of law on all remaining claims against them. The absence of a constitutional violation on the part of a Medical Defendant forecloses a derivative claim that Defendant Griffin participated in or caused a related deprivation of Mr. Flemons' Eighth Amendment rights. See *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000) (explaining that personal capacity claims against a police chief were "dead in the water" where there was no constitutional violation by officers).

Defendant Griffin is therefore entitled to summary judgment in his favor.

## VI.    Supplemental State-Law Claims

Because the Court finds no issues for trial with respect to Mr. Flemons' claims under 42 U.S.C. § 1983, it recommends that his supplemental claims for medical malpractice pursuant to state law be dismissed without prejudice. 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . . ").

## VII.    Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motions for summary judgment *(Docs. 145, 148)* be GRANTED, and Mr. Flemons' remaining claims be dismissed as follows:

a.    The Medical Defendants[7] and Defendant Rory Griffin are entitled to judgment as a matter of law on Mr. Flemons' 42 U.S.C. § 1983 claims not previously dismissed, all of which should be DISMISSED WITH PREJUDICE;

---

[7] In addition to CCS, the Medical Defendants include LaSonya Griswold, Estella Bland, Alesshia Quinones, Dana Taunton, Lisa Knight, Dana Peyton Haynes, Erika Crompton, Yavonda Key, Monica Dunn, Quible Butler, Sarah McVay, Lana Fryer Duvall, Megan Thomas, Charles Crawley, Angela Mixon, Adloneya Baker, and Alisha Bell.

      b.     Mr. Flemons' supplemental state law claims against the Medical Defendants and Defendant Rory Griffin should be DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1367(c)(3).

      2.     Because all claims asserted by Plaintiff in his complaint and amended complaint (*Docs. 2 & 33*) have now been resolved, a final judgment be entered and the case closed.

      DATED this 9th day of August, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

25